# HUTCHINS *v.* DANTE.

EQUITY; TRUSTS AND TRUSTEES; WILLS; PARTIES; DUE PROCESS; SERVICE OF PROCESS; DOWER; WIDOW'S ELECTION; DECEDENTS' ESTATES.

1. One who, as trustee, holds an estate for the benefit of the grantor until his death, after which it is to revert to his estate, may, by appropriate proceedings, invoke the aid of equity to direct the administration of the trust, where the estate is large and requires the payment of taxes and the renewal of mortgages, and the grantor has become incapacitated from advising with the trustee or directing the disposition of the net income, and the children of the grantor are not necessary parties to such proceedings.

2. The requirements of due process of law are satisfied in proceedings to obtain equitable cognizance of a trust estate, by serving process upon the grantor, who has become incompetent to advise the trustee, but who has not been adjudged insane, conformably to a court rule promulgated by statutory authority, and authorizing service by leaving a copy of the process at the residence of the person to be served, where personal service cannot be had.

3. An objection that service of process should have been in accordance with a Code provision relating to persons *non compos mentis* will not avail to defeat equitable jurisdiction of a trust estate held for the benefit of the grantor until his death, when it was to revert to his trust estate, where, although there were some allegations of mental disability, jurisdiction, after being refused until a guardian *ad litem* was appointed and had submitted the incompetent's interests to the court, was taken with the consent of all parties, under service made conformably to the statutory rule authorizing the service of process at the party's residence, when personal service cannot be made, and upon the ground of the grantor's physical disability incapacitating him from advising with the trustee and directing the disposition of the income, no adjudication of insanity having been made.

4. A trust estate held for the benefit of the grantor until his death, when it shall revert to his estate and be paid over to the executors named in his will, remains, after his death, in the hands of the trustee until the probate of the will and the issuance of letters, subject to the supervision of equity, under jurisdiction previously taken with the consent of all parties.

5. Though not bound to do so, a widow may, if to her advantage, elect before the probate of the husband's will whether she will take under it, or will take the statutory right of dower and distribution.

6. A court of equity which, before the grantor's death and with the consent of all interested, took jurisdiction of a trust estate held for the grantor's benefit until his death, and then to be turned over to his executors and to pass to the persons, including the wife, named in the will, cannot, after the testator's death and pending a will contest, order any part of the income thereafter accruing to be paid to the widow on her share, at least where she has not elected between the provisions of the will and the statutory rights of dower and distribution.

7. The jurisdiction of equity over trust estates is limited to their conservation, and does not embrace the power of distribution given by statute to the probate court.

No. 2486.   Submitted March 10, 1913.   Decided April 7, 1913.

HEARING on an appeal by the petitioner, a widow, from a decree of the Supreme Court of the District of Columbia, holding an equity court, dismissing a petition for the payment of one third of the net income and rents from certain real estate in the possession of the appellee trustee, pending the trial of issues framed on a caveat to an alleged will.   *Affirmed.*

The COURT in the opinion stated the facts as follows:

On May 19, 1911, William J. Dante, trustee, instituted the proceeding into which the matters here in issue were subsequently introduced, by filing a bill against Stilson Hutchins, Rose Keeling Hutchins, his wife, Walter S. and Lee Hutchins, his sons, and Mildred Rogers his granddaughter.

The substantial allegations of this bill are that, on March 7th, 1910, said Stilson Hutchins, joined by his wife, Rose K., conveyed all of the property of said Hutchins, of every kind and character, to Dante in trust to hold and to exercise control of the same, with full power of management and care, collection of rents, payment of taxes, mortgaging, etc., the net

proceeds to be set aside to the use and control of said Hutchins during his lifetime, subject to the payment by the trustee to said Rose K. of an amount directed in a contemporaneous writing. It was provided that no sale or exchange of any of the real property should be made without the consent of said Stilson and Rose K. Hutchins. Upon the death of Stilson Hutchins, the property conveyed "is to immediately revert to the estate of Stilson Hutchins, and is to be conveyed, assigned, and turned over * * * to any executors or trustees that may be named in the last will and testament of the said Stilson Hutchins, for distribution in accordance with the terms thereof, the said Rose K. Hutchins expressly reserving the right at such time to elect whether she shall take her downer interest therein as allowed by law, or the share to which she may be allotted under the last will and testament of the said Stilson Hutchins." The property so conveyed consisted of certain large buildings in the city of Washington, under rental, and large blocks of stocks and bonds. For about sixteen years the plaintiff had been the confidential agent of said Stilson Hutchins, managing his estate, investing his funds, etc. For some months after the execution of said deed, plaintiff had been able to consult and advise with said Hutchins and have his approval of the conduct of the trust; but "in the latter part of the year 1910, the physical condition and health of the said Stilson Hutchins became such that it was inadvisable to consult or advise with the said Stilson Hutchins further with reference to the conduct, care, and administration of the said estate." That, pursuant to the terms of said trust deed, plaintiff rendered monthly accounts to said Hutchins, who approved the same, but as the condition of his health has been such for several months, plaintiff, by advice of his physicians, has submitted no more accounts for his approval. That the responsibility imposed on the plaintiff is great, and as important matters are constantly presented for action, and as he can no longer advise with said Hutchins, and the trust may continue for a long time, he is advised that it is his duty to ask that said trust may be administered under the direction of the court. Subpœna was

duly issued, and the following return of service upon Stilson Hutchins was made by the marshal of the District:

As personal service could not be made, served copy of within on Stilson Hutchins by leaving said copy at 1603 Massachusetts Ave., N. W., Washington, District of Columbia, being the usual place of abode of said Stilson Hutchins, with Florence Murphy, an adult resident of said Stilson Hutchins's family, May 19, 1911.

Aulick Palmer, Marshal.

The other parties were duly served.

Lee Hutchins answered, admitting the facts alleged and consenting to the relief prayed.

Walter S. Hutchins answered and admitted the general allegations of the bill, but alleged that said Stilson Hutchins was in such condition that he could be advantageously and profitably consulted concerning his affairs; that permission to do so by those in charge of him had been refused to plaintiff. He alleged that he was willing that the trust, during its existence, should be administered under the direction of the court. Rose Keeling Hutchins answered at some length. Among other things, she averred that at the time of filing the bill, and for a long time prior thereto, Stilson Hutchins was mentally incompetent to transact any business whatever, and that some proceeding should be taken to determine his competency. Mildred Rogers, an infant, answered by guardian *ad litem,* neither denying nor admitting the averments of the bill, but expressing the belief that administration under the direction of the court would be in interest of all concerned.

The court declined to take the bill *pro confesso* as to Stilson Hutchins, reciting that the answer of a defendant questions his sanity, "but, it further appearing to the court therefrom that said Stilson Hutchins's physical condition is such that he is now unable to attend to his business affairs," the order is' denied, and Nathaniel Wilson was appointed guardian *ad litem* to defend the cause.

The guardian *ad litem* answered that he is informed and believes that said Hutchins is physically and mentally unfit and unable to give attention and make answer; he neither admits nor denies the bill, but submits his interests to the protection of the court. On hearing, November 3, 1911, the court entered a decree taking jurisdiction of the cause and authorizing the trustee to administer the trust under the direction and supervision of the court. The trustee was further ordered to file an inventory showing in detail the several items of the estate, and the obligations of the same. This was filed and shows a large estate, real and personal. During the administration certain bills were ordered paid. On petition of Rose Keeling Hutchins, opposed by Walter S. Hutchins as unnecessary, the trustee was ordered to pay taxes on the family home, and certain accounts were ordered to be reported upon by the auditor. Certain reports of the auditor, exceptions thereto, and action thereon, are unimportant in this case. Stilson Hutchins died April 21, 1912.

May 15, 1912, Rose Keeling Hutchins filed a petition in said cause. She alleged said trust and the decree assuming jurisdiction of the same. She recited certain real estate, alleging the same to be encumbered, some of which are personal obligations of said Hutchins, others not; but that the personal estate was largely more than necessary to pay all such personal obligations and interest. That on April 24, 1912, there were delivered to the register of wills two paper writings purporting to be wills of said Hutchins. The first one, dated May 27, 1908, appoints Rose Hutchins, Walter S. Hutchins, Lee Hutchins, and William J. Dante, executors, without bond, and, after some minor bequests, his estate is devised and bequeathed as follows: To Rose Hutchins, 40/100; to Walter S., 30/100; to Lee Hutchins, 20/100; and to Mildred Rogers, 10/100. The second will, dated October 26, 1910, gives his estate to the same persons, but changes the portions as follows: Rose Hutchins, 35/100; Walter S., 35/100; Lee Hutchins, 20/100, and Mildred Rogers, 10/100. Walter S. Hutchins, Lee Hutchins, and Charles L. Frailey are named executors.

That, on May 8, 1912, said executors offered the will of October 26, 1910, for probate; they alleged personal estate of the value of $1,155,685, and real estate of the value of $3,347,-000. Debts secured by personal estate were stated to be $360,-875, and those secured on real estate to be $1,223,647. That the statement is erroneous in that they include $980,000 which are merely liens on real estate, but not personal obligations of decedent. His total obligations do not exceed $650,000. That, if the paper writing offered should be admitted to probate, the trustee should be directed to convey all of the real estate to the four devisees as tenants in common in the proportions named in said will; and that, if it be not admitted to probate, but the will of May 27, 1908, should be, then the direction should be made in the proportions thereof. That there is now in the hands of the trustee a large sum of money derived from the rents collected since said Hutchins's death. That the net income from said improved real estate is over $7,500 per month. That petitioner's interest in the same, if either of said wills should be admitted to probate, or if none should be, is over $2,500 per month. She prays that the trustee be ordered to collect said income and make necessary disbursements for the preservation of the property. That he shall be directed forthwith to report the amount of income collected since April 21, 1912; and that he shall make monthly reports of the same. That he be directed to pay to petitioner on June 1, 1912, and monthly thereafter, one third of the net rents and income derived from said real estate, and that he shall take credit therefor. This was denied May 22, 1912, by order then entered. On application of the trustee, the court, on May 29, 1912, ordered him to pay accrued taxes. Other orders were thereafter made authorizing the renewal of certain loans secured by mortgage.

August 28, 1912, Rose Keeling Hutchins filed another petition in said cause, in which she repeated substantially the allegations of her former petition of May 15, 1912, which had been denied. In addition she alleged that, in answer to the citation of Frailey and Hutchins, executors, for probate of the will of

October 26, 1910, she alleged that, while it was her belief that
testator was incompetent at the time to execute a valid deed or
contract, and that the same had been obtained by undue in-
fluence, nevertheless, in view of the fact that the interests of the
heirs and next of kin are not substantially different from those
created by the will of May 27, 1908, and the interest of no one
but herself is lessened, she does not consider it her duty to ob-
ject to the probate. That thereafter Lee Hutchins filed a cav-
eat to said will, and in June 14, 1912, the probate court passed
an order appointing William J. Dante collector of said estate.
That the former petition of plaintiff was denied, but not dis-
missed, for the reason that the court held that it was without
jurisdiction to grant the relief, because petitioner had not elect-
ed whether she would claim under a will, or her dower right.
The prayers are the same as in the former petition. Rule to
show cause was issued to all the parties at interest. Lee Hut-
chins answered that he does not admit that some of the indebt-
edness of decedent secured by mortgage on real estate is not a
primary obligation of decedent, and he denies that the personal
estate is in excess of an amount necessary to pay the personal
obligations of decedent, or that it is sufficient to pay the debts
of decedent. He denies that the total obligations of decedent
do not exceed $650,000, or that the $980,000 of liens are not
personal obligations of decedent. He avers that the court is
without jurisdiction to grant the petition. Neither of said
wills have been admitted to probate, only one having been of-
fered therefor, and a caveat has been filed to that. No executor
or administrator is a party to the cause, and the court is with-
out power to pay any part to a legatee under an unprobated
will. Plaintiff is entitled to no part of the estate as doweress,
because she has not renounced any rights under said alleged
wills.

Walter S. Hutchins appeared specially for the purpose of
objecting to the jurisdiction over his person and the represen-
tatives of decedent. He also objected that the service of proc-
ess upon Stilson Hutchins in said original suit was not such
personal service as is required by due process of law. That

said Hutchins never knew of said process, and did not appear in person or by attorney. That the death of said Hutchins has never been suggested, and no process has issued against his executors, heirs, or next of kin. That the death of said Hutchins terminated the title of the trustee, Dante.

Dante answered alleging his willingness to furnish accounts; that the average net income from the real estate will not exceed $5,500.00 per month; and he submits to the court the question of payments to be made to said Rose Keeling Hutchins.

The court dismissed the petition and this appeal is by Rose Keeling Hutchins from that order of dismissal.

*Mr. John C. Gittings* and *Mr. J. Morrill Chamberlin* for the appellant.

*Mr. R. Ross Perry, Mr. E. H. Thomas* and *Mr. Charles H. Merillat* for Walter S. Hutchins.

*Mr. Myer Cohen* and *Mr. William G. Johnson* for Lee Hutchins.

*Mr. Edwin C. Brandenburg, Mr. Clarence A. Brandenburg,* and *Mr. F. Walter Brandenburg* for William J. Dante, trustee.

Mr. Chief Justice Shepard delivered the opinion of the Court:

1. It is not seriously contended that the equity court did not have jurisdiction of the trust during the lifetime of Stilson Hutchins, who, as alleged, had become physically incompetent to advise with the trustee, and to direct the disposition of the net income of the estate. The trust was express, and no one contested its validity. The trust estate was large; interest and taxes had to be paid, and loans secured by mortgage renewed. Under all the circumstances, the trustee was justified in invoking the jurisdiction of the equity court for his own

protection, as well as that of the disabled *cestui que trust.* The children of Stilson Hutchins were not necessary parties; but seem to have been made parties in order that they might have an opportunity, in the disabled condition of their parent, to express their satisfaction or dissatisfaction with the proposed relief. Each availed himself of the opportunity to express his approval.

2. After the death of Stilson Hutchins, and in a plea to the petition of Rose Keeling Hutchins, Walter S. Hutchins raised the question of jurisdiction of the court to enter the decree assuming jurisdiction of the trust, because there had been no personal service of the subpœna upon Stilson Hutchins. The substance of the plea and a copy of the marshal's return of the writ are given in the foregoing statement. The return recites that, as personal service could not be made, served copy of within on said Stilson Hutchins by leaving said copy at 1603 Massachusetts Avenue, N. W., Washington, District of Columbia, being the usual place of abode of said Stilson Hutchins, with Florence Murphy, an adult resident in said Hutchins's family, May 19, 1911. This return was in literal conformity with the provisions of equity rule 15 of the supreme court of the District, prescribing the manner in which service shall be made where direct personal service cannot be had. The rule was promulgated by statutory authority. It has been long in force, and we are not advised that its validity has ever before been questioned. We are of the opinion that the service was regular, and had the effect to bring the defendant Stilson Hutchins before the court. *Harryman* v. *Roberts,* 52 Md. 64–75; *Continental Nat. Bank* v. *Thurber,* 74 Hun, 632, 26 N. Y. Supp. 956, S. C. 143 N. Y. 648, 37 N. E. 828. See also *Santiago* v. *Nogueras,* 214 U. S. 260–267, 53 L. ed. 989–992, 29 Sup. Ct. Rep. 608.

The argument that the service should have been in accordance with the provisions of the Code relating to persons *non compos mentis* is with merit. The allegations of the bill was that Stilson Hutchins was physically disabled, not mentally. Walter S. Hutchins, who filed this plea, had, in answer to the

bill, alleged that his father was both physically and mentally capable. Rose Keeling Hutchins's answer suggested mental disability. Because of this suggestion, apparently, the court had declined to enter a decree *pro confesso;* but on the ground of physical disability, he appointed a guardian *ad litem* to represent him. The guardian *ad litem* answered that, from information, he believed the absent defendant to be both physically and mentally unfit to give attention to the case; and, neither admitting nor denying the allegations of the bill, he submitted his interests to the court. There was no adjudication of insanity; no committee was asked for or appointed; the decree assumed jurisdiction of the trust upon the ground of the physical disability of the *cestui qui trust.* All parties were content therewith until the filing of the petition of Rose Keeling Hutchins, after the death of Stilson Hutchins, praying an order of partial distribution.

3. Undoubtedly, the active duties of the trustee terminated with the death of Stilson Hutchins; but the estate remains in his hands until the probate of a will and the issuance of letters to the executors named therein, to whom the estate was required to be delivered. If no will shall be probated, but intestacy established, then delivery of the real estate is to be made to the heirs at law, and of the personal estate to the personal representatives, of the decedent. Delivery of the personal estate has been made to the collector appointed by the probate court pending the proceedings to probate the will, to which a caveat has been filed. The real estate remains in the possession of the trustee under the supervision of the equity court. The encumbrances upon the real estate, which require renewal from time to time, the payment of interest thereon, the collection of rents, the repair of houses, and the payment of taxes, render it necessary to the conservation of the estate that the equity court shall retain its supervision of the same. Its jurisdiction, we think, is ample for the purpose.

4. The probate court has authority, in case of the contest of a will, to appoint a collector of the personal estate. Code sec. 304 (31 Stat. at L. 1237, chap. 854). His powers, when so

appointed, are those in general of a temporary administrator. Sec. 306. This power was exercised by the appointment of Dante, who gave bond and assumed the new duties. In order to provide for the needs of next of kin and legatees who may be in need of subsistence, or in greatly straitened circumstances, the probate court has authority, before the time for final distribution arrives, to order payments to be made to them on their shares or legacies, in certain proportions and under certain conditions. Sec. 391. This section of the Code is inapplicable to the petition in this case, because the payment is asked to be ordered by the equity court out of the net income of the real estate administered by the trustee under its supervision. The petition alleges that there is a large monthly surplus arising from the rents of the estate after the payment of all charges. That there had accumulated such a surplus before the death of Stilson Hutchins, amounting to $26,000, appears from a report of the trustee. This, however, would pass into his hands as collector of the estate. But he shows that a surplus of $5,000 had accumulated during the month after the death of Hutchins; and his answer admits that there will be a net monthly income not to exceed $5,500 per month. It seems reasonable to suppose that there are no other obligations of decedent other than those reported by the trustee, and that there will be accumulated a large sum of money each month to which the heirs at law would be entitled, and which could safely be paid to them if the equity court has jurisdiction for that purpose. That this accumulation may go on indefinitely during the contest of the will, and that some of the parties ultimately entitled thereto, particularly the plaintiff, may be in great need of it, presents a case of great hardship. If the will or wills be defeated, plaintiff will be entitled to her statutory interest in both real and personal estate. Plaintiff represents that what she asks may be distributed to her pending the proceedings contesting the will is no more than she will be entitled to in event either shall be probated, or in event of established intestacy. Her petition was dismissed because the court was of the opinion that it had no jurisdiction to order the payment of any part

of the income to her, unless she had relinquished any claim under the will, and claimed her dower interest in the real estate; which she had not done. She is not called upon to elect whether she will claim under the will until after a will shall have been finally probated. But there is nothing to prevent her exercising this election at any time before the probate of the will, should she find it to her interest to do so. She is free at any time to claim her statutory rights of dower and distribution. Without the exercise of this right, we are constrained to hold that she has no interest in the trust estate that can be set apart to her under this petition.

The jurisdiction of the equity court is limited to the conservation of the trust estate. It has not the power of distribution conferred by statute on the probate court.

The order is therefore affirmed with costs.        *Affirmed.*